UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DENNIS VAN BANH,<br><br>             Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security,<br><br>             Defendant. | Case No. CV 14-03122 AJW<br><br>**MEMORANDUM OF DECISION<br>AND ORDER** |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

In an October 19, 2012 written hearing decision that is the Commissioner's final decision with respect to plaintiff's application, an administrative law judge (the "ALJ") found that plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform work available in significant numbers in the national economy.[JS 1-2; Administrative Record ("AR") 24-30].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r, Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

## Discussion

**Medical opinion evidence**

Plaintiff contends that the ALJ erred in evaluating the medical opinion evidence.

The ALJ found that plaintiff, who was then 23 years old, had a severe impairment in the form of Marfan syndrome[1] with recurrent spontaneous pneumothoraxes[2], status post surgery two times. [AR 26]. The ALJ noted that although plaintiff had spontaneous pneumothoraxes followed by two surgeries, in August 2007 and November 2007, he had not had any pneumothoraxes since that date. [AR 27]. The ALJ

---

[1] Marfan syndrome is "an inherited disorder that affects connective tissue — the fibers that support and anchor your organs and other structures in your body. Marfan syndrome most commonly affects the heart, eyes, blood vessels and skeleton. [¶] People with Marfan syndrome are usually tall and thin with disproportionately long arms, legs, fingers and toes. The damage caused by Marfan syndrome can be mild or severe. If [the] heart or blood vessels are affected, the condition can become life-threatening." Mayo Clinic website, Marfan Syndrome, Definition, http://www.mayoclinic.org/diseases-conditions/marfan-syndrome/basics/definition/con-20025944 (last accessed Aug. 20, 2015).

[2] A pneuomothorax is "a collapsed lung" which occurs "when air leaks into the space between your lungs and chest wall. This air pushes on the outside of your lung and makes it collapse." Mayo Clinic website, Pneumothorax, Definition http://www.mayoclinic.org/diseases-conditions/pneumothorax/basics/definition/con-20030025 (last accessed Aug. 20, 2015).

found that plaintiff exhibited other symptoms of Marfan's syndrome, including episodes of chest and back pain with shortness of breath requiring medical attention two to three times a year, a cachectic appearance[3], kyphosis, scoliosis, mild pectus excavatum[4], myopia, and complaints of joint pain. [AR 27].

The ALJ found that plaintiff retained the RFC to perform a restricted range of sedentary work. [AR 27]. In formulating his RFC finding, the ALJ rejected the opinion of David Rimoin, M.D., plaintiff's treating physician at the Cedars-Sinai Medical Genetics Institute. [AR 27]. On March 23, 2010, Dr. Rimoin opined that plaintiff "is unable to hold a job due to the limitations of his" Marfan syndrome. [AR 215]. Dr. Rimoin stated that plaintiff could not work due to "recurrent pneumothorax and joint pain. These limit his ability to function outside of the house and have kept him out of school and work since the features first started." [AR 215]. Dr. Rimoin stated that plaintiff was receiving treatment for his condition, and that "it is only speculation as to when [plaintiff] will be able to return to his normal activities." [AR 215].

The ALJ rejected what he characterized as Dr. Rimoin's "overly generous assessment" because "he cites recurrent pneumothorax as a cause, but the evidence shows that there has been none in the five years since his [November 2007] surgery." [AR 27]. The ALJ relied instead on the opinions of the Commissioner's examining internist, John Sedegh, M.D., and the state agency nonexamining physician, Willie Collie, M.D. Dr. Sedegh and Dr. Collie both opined that plaintiff was limited to light work; however, the ALJ gave plaintiff "the benefit of the doubt" and limited him to sedentary work. [AR 26-27, 278-285, 317-324].

A treating physician's opinion is entitled to greater weight than those of examining or nonexamining physicians because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual . . . ." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188); see, 20 C.F.R. §§ 404.1502, 404. 1527(d)(2), 416.902, 416.927(d)(2).

---

[3] Cachexia is "general weight loss and wasting occurring in the course of a chronic disease or emotional disturbance." Stedmans Medical Dictionary 131720 cachexia (2014).

[4] Pectus excavatum is "[a] hollow at the lower part of the chest caused by a backward displacement of the xiphoid cartilage." Stedmans Medical Dictionary 663940 pectus excavatum (2014).

1       The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record,
2 for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating
3 or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial
4 evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004);
5 Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831
6 (9th Cir. 1995).

7       Plaintiff contends that the ALJ's stated reason for rejecting Dr. Rimoin's opinion—that plaintiff had
8 not had a recurrence of pneumothorax since 2007—is inconsistent with the ALJ's step-two finding that
9 plaintiff's impairment was severe because he had "recurrent spontaneous pneumothoraxes, status post
10 surgery x 2." [AR 26]. There is no material inconsistency. The ALJ's step-two finding relied on plaintiff's
11 history of recurrent spontaneous pneumothorax prior to his 2007 surgeries. It is clear that the ALJ found
12 that plaintiff had not, in fact, had a pneumothorax since November 2007. [AR 27]. Plaintiff does not dispute
13 that fact, which is supported by substantial evidence in any event. [See AR 710 (September 2011 pulmonary
14 consultation note stating that plaintiff "has had no documented recurrence" of pneumothoraxes since
15 November 2007, and that the focus should be on helping plaintiff overcome "his anxiety and fear of"
16 recurrence of pneumothoraxes "given that he has done well over the past 4 years")]. The ALJ did not err
17 in concluding that the absence of any incident of pneumothorax during the five years since plaintiff's
18 surgery in November 2007 undermined the reliability of Dr. Rimoin's disability opinion.

19       Plaintiff also contends that the ALJ erred in rejecting Dr. Rimoin's opinion without addressing the
20 other ground Dr. Rimoin cited in support of his disability opinion, plaintiff's joint pain. [AR 27, 215].
21 Plaintiff is correct. The ALJ acknowledged that plaintiff complained of joint pain as well as of episodes
22 of chest and back pain for which he sought emergency room treatment two to three times a year. [AR 27].
23 However, the ALJ failed to discuss Dr. Rimoin's opinion that plaintiff could not hold a job due to joint pain
24 associated with his Marfan's syndrome. The Commissioner argues that there is objective medical evidence
25 in the record that contradicts or undermines Dr. Rimoin's opinion in this respect. However, this court is
26 required "to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not
27 post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v.
28 Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009); see Stout, 454 F.3d at 1054 (stating that

the court is "constrained to review the reasons the ALJ asserts" for the denial of benefits and "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (quoting Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)). Therefore, the ALJ committed reversible legal error.

**Hypothetical questions**

Plaintiff further contends that the ALJ posed a defective hypothetical question to the vocational expert ("VE"), and therefore the VE's testimony is not substantial evidence supporting the ALJ's opinion.

The ALJ's job at the fifth step in the sequential evaluation procedure is to pose hypothetical questions that set out all of the claimant's impairments for the consideration of the vocational expert, who then "translates these factual scenarios into realistic job market probabilities . . . ." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). Hypothetical questions posed to the vocational expert must accurately describe all of the limitations and restrictions of claimant that are supported by the record. Tackett, 180 F.3d at 1101; Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993). A vocational expert's response to a hypothetical question constitutes substantial evidence only if it is supported by the medical evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

The ALJ asked the VE to assume that the hypothetical person could "rarely, meaning no more than 5 percent of the day" perform "activities such as crouching, kneeling, crawling, and climbing stairs[.]" [AR 953]. The VE testified that the hypothetical person could perform the full range of sedentary, unskilled work with those limitations. [AR 954]. The ALJ found that plaintiff has an RFC for sedentary work, except that he "rare[ly]" (that is, 5% of the day or less)[5] could engage in "climbing, *bending*, kneeling, *stooping*, crouching and crawling . . . ." [AR 27 (italics added)]. Plaintiff argues that since that hypothetical question did not restrict bending or stooping to 5% of the day or less, the VE was not asked to consider, and did not consider, whether such bending and stooping restrictions would preclude performance of the full range of sedentary unskilled work.

"Stooping" is the term used by the Commissioner for bending the spine downward and forward at

---

[5] The ALJ's decision defines "rare" as "50% of the day or less" [AR 27], but the transcript of the ALJ's hypothetical question and logic compel the conclusion that this is a typographical error, and that the ALJ meant "5% of the day or less."

5

the waist. SSR 85-15, 1985 WL 56857, at *7. Other forms of bending discussed in the Commissioner's policy rulings are kneeling (bending the legs at the knees to come to rest on one or both knees) and crouching (bending the body downward and forward by bending both the legs and spine). SSR 85-15, 1985 WL 56857, at *7.

There does not appear to be any meaningful distinction between "stooping" and other types of "bending" (except kneeling and crouching) for purposes of assessing a claimant's RFC. See generally SSR 85-15, 1985 WL 56857, at *7;SSR 83-14, 1983 WL 31254, at *1-*2, *4; SSR 83-10, 1983 WL 31251 at *5-*6. For example, the definitions of both sedentary and light work refer to stooping, but not bending. The definition of "non-exertional impairment" refers to stooping, not bending. See SSR 83-10, 1983 WL 31251, at *6. Similarly, the DOT rates occupations for stooping, but not for bending. See SSR 83-14, 1983 WL 31254, at *1.

Most unskilled sedentary occupations require the ability to stoop occasionally, which means from very little up to one-third of the time. SSR 96-9p, 1996 WL 374185, at *8. "A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping." SSR 96-9p, 1996 WL 374185, at *8.

Although plaintiff's inability to stoop or bend no more than 5% of the day is not a "complete inability to stoop," it is close enough that it seems likely to "significantly erode the unskilled sedentary occupational base." Since the ALJ failed include that limitation in the hypothetical question, the VE was not asked to consider the effect of all of the limitations in plaintiff's RFC on the unskilled occupational base. Accordingly, the VE's testimony does not constitute substantial evidence supporting the ALJ's finding that plaintiff could perform the full range of unskilled sedentary work.

**Credibility finding**

Plaintiff contends that the ALJ erred in evaluating the credibility of plaintiff's subjective symptoms.

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of his or her subjective symptoms, the adjudicator is required to

consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan, 242 F.3d at 1148; see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885; see Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (enumerating factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989)(same). If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ discounted plaintiff's subjective symptom testimony because his condition is "stable" [AR 28], but it is not clear from the ALJ's decision what level of functioning being "stable" implies or how being "stable" undermines plaintiff's subjective allegations. The ALJ found that plaintiff's daily activities were inconsistent with his allegations because plaintiff has a driver's license and was attending school. [AR 28]. Plaintiff's ability to drive and attend school conceivably could undermine the credibility of his subjective allegations. However, the ALJ did not acknowledge, or articulate reasons for rejecting, plaintiff's testimony that driving and performing other daily activities caused pain and other symptoms or his testimony that his symptoms interfered with his inability to attend school. [See AR 938-951]. The ALJ also cited a disability report in which plaintiff said that he lived with his family, took care of his personal needs, socialized with friends and family, shopped using his phone or the computer, went to the library, and enjoyed reading, drawing, card games, and board games. [AR 28]. The ALJ's decision does not explore whether or how those daily activities are "inconsistent with [plaintiff's] alleged symptoms" or "indicat[e] capacities that are transferable to a work setting." Molina v. Astrue, 674 F.3d 1104, 1112-1113 (9th Cir. 2012). The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and

all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1015-1016 (9th Cir. 2014) (holding that the ALJ erred in concluding that the claimant's reported daily activities , which "included talking on the phone, preparing meals, cleaning her room, and helping to care for her daughter," were inconsistent with her subjective pain complaints).

**Conclusion**

The Commissioner's decision is not based on substantial evidence and is legally erroneous. Since, however, the record is "uncertain and ambiguous," the "proper approach" is to remand this case for further administrative proceedings and issuance of a new decision consistent with this memorandum of decision. Treichler v. Colvin, 775 F.3d 1090, 1105, 1107 (9th Cir. 2014)**.**

Accordingly, the Commissioner's decision is **reversed,** and the case is **remanded** for further administrative proceedings.

**IT IS SO ORDERED.**

August 24, 2015

ANDREW J. WISTRICH
United States Magistrate Judge